Good morning, your honors. Shana Booth on behalf of Appellant Ivo Walkuski, and I'll be presenting oral arguments on behalf of both appellants as we filed a joint appeal. Good morning, your honors. Deidre Bowman on behalf of Omid Razavi. All right. And our panel is not real strict about time limits, but tell us how much time you would like. Your honor, I anticipate needing between 10 and 12 minutes for my initial argument and would like to reserve 5 minutes for rebuttal. I think that would do it. About the same. We like brevity. And as both of you probably know, the microphone in front of you is not for amplification. It's for recording purposes. So if you would both keep your voices up so we all can hear, we would appreciate it. I just have one matter to note. Appellant's counsel was anticipated to be here. That would be counsel for Appellant Zegelman. I do anticipate him being here. I think he might have gotten held up in the security line downstairs. Okay. At least he's not at the airport where he'd be waiting for an hour and a half. That's correct, your honor. All right. Well, he's not going to argue, I take it? He was not anticipated to argue, as I'll be arguing for both appellants, but he did want to be here in case this court had any questions specific to Ms. Zegelman. All right. Well, I assume he'll be up here shortly, and if he has anything to add or we need to talk to him, we'll do that. Thank you. But in the meantime, Ms. Booth, would you like to proceed? Yes. And before you start, I have a question which I'll lead in by saying, why specifically do you prefer to have an absolute immunity rather than a qualified immunity, taking into consideration – well, that's fine. Just answer that and explain to me why you think the one is more important than the other. Certainly, your honor. As you all know, we are here today arguing that appellants' reports of sexual assaults to their campus security should be protected by the absolute privilege. A qualified privilege would not be enough here. Affording appellants' reports a qualified privilege would be essentially providing them with no protection at all. Why so? Your honor, that's because a student who came forward to report campus sexual assaults to their campus security under a qualified privilege would have to face the decision of making the report in the first place pursuant to the school policy that directs them to report to campus security or facing potential civil liability and their parents to face potential civil liability. That is a choice that we do not place on any victim of a crime. We do not place that victim on a crime. The long-standing Illinois law is that we encourage the free-flowing, untinnered reports of crimes to law enforcement because we want to protect crime victims so they feel comfortable in coming forward to report to the crime in the first place. Your honor's question goes right to the heart of the matter of what the Hartman Court addressed. The Indiana Supreme Court looked at whether a qualified privilege or an absolute privilege should apply. And I have an answer for you. In Hartman, is it not true that there was required that the student handbook be signed, that they be required to take a class in what the consequences were, such as number one, lying, they would be dismissed from school. Two, if it went to a criminal proceedings, I think that's your first one. If it went to a criminal proceeding, that no degree would be awarded until the outcome for either. That is the reason, supposedly, that Hartman was allowed. In other words, that was in full force and effect before they even considered passing absolute immunity. If they had not been there, they would not have done it. Your honor, I respectfully disagree. The Hartman Court did not simply look at the school policy issue. It's right in the legislative. They didn't look at the school policy, but they also looked at the public policy surrounding reports of sexual assault. The Hartman Court reasoned that by not protecting the student's reports with an absolute privilege, it could chill future reports of sexual assault for fear of retaliation. Would you read the legislative history? The legislative history for... To when they attempted to pass the bill. Which bill is your honor referring to? The Hartman legislation that made it absolute immunity. For crime reports to law enforcement or for the specific reports in Hartman? Specific reports at the school. No, your honor, because the court in Hartman looked at the school policy and it looked at the public policy surrounding reporting a crime of sexual assault occurring on a college campus. And that is what this court should look at. In Illinois, as opposed to Indiana, there has always been an absolute privilege for crime victims reporting. Is that right? That is correct, your honor. The absolute privilege in Illinois for reporting crimes to law enforcement goes all the way back to 1939 to this court's decision in Dean v. Kirkland. And this court reaffirmed... This court reaffirmed that decision 20 years ago in Vincent v. Williams. And that is why it's all the more reason to protect crime reports here with the absolute privilege because Illinois has recognized an even greater public importance in public policy for protecting crime reports. Is there any question that if Ms. Walkoski, instead of going to campus security, used her cell phone to call 911, we wouldn't be here, right? If she called the Chicago police and said there's somebody following me, I need help. No question she's entitled to absolute immunity, right? Correct, your honor. That would fall under the existing absolute privilege for statements made to law enforcement. But there is no difference between campus security and law enforcement on a college campus for the very purpose of receiving reports of on-campus sexual assaults. The school policy holds campus security out as law enforcement and directs students to report to campus security. In fact, it explicitly states if you are on campus, contact campus security if you believe you are the victim of campus sexual assault. But the consequences are none in that handbook. It says may. Your honor, it does not say may. May code of conduct. Your honor, the school of the Art Institute of Chicago's student handbook says knowingly false reports will be subject to a violation of this conduct. Nowhere in it says the word may, which is a point that we made clear in our reply brief. I don't know where Mr. Rezaghi found that language, but it does not exist in the school of the Art Institute's handbook. In fact, the deterrence policy in the school of the Art Institute's handbook is even more strong than the Purdue's deterrence policy in the Hartman case. Tell me what it is. If you can't, I mean, I don't have... I'm interested because you've got me half and half. In other words, I'm half with you and half not. Well, if you can't find it now, look at it. No, I have it, your honor. It's on the record, page 164. It says knowingly false accusations are prohibited and will be treated as violations of this policy. And that is in the specific section concerning sexual assaults, relationship violence, and stalking. All right. Well, let's try to turn the page a little bit and talk about one of the more significant issues in this case, and that is why should we consider campus security to be the equivalent of law enforcement for the purposes of getting this kind of privilege? For three reasons, your honor. First, we look to what campus security does, what their function is. Campus security are there for the protection and safety of college students in the college community. Campus security is the sole law enforcement presence that patrols the college campus, the classrooms, the hallways, and the dormitories. Second, we look to the school policy. The School of the Art Institute of Chicago directs students to report sexual assaults occurring on campus to their campus security, and thus the school holds out campus security as law enforcement for the purpose of receiving these sexual assault reports. And third, while no Illinois court has been called on to answer this specific question, federal law speaks to this issue. I'll be addressing the SAVE Act, the Federal Campus Sexual Violence Elimination Act, for the second independent reason that this court should apply the absolute privilege based on public policy grounds. But here I refer to it for the definitional points. The SAVE Act treats campus security as the functional equivalent of law enforcement for purposes of receiving student reports of campus sexual assaults. Because these three authorities hold out campus security as law enforcement to students, a student who chooses to make a report of sexual assaults to their campus security should be afforded the same protections under Illinois law as any other prime report to law enforcement. Does it make a difference in your analysis whether it's a private or public institution? It does not, Your Honor. The position advanced by Mr. Rezavi that there should be a distinction between private and public colleges, or between a college that opted to have a police force under the Illinois statute and those smaller schools with fewer resources who did not, would result in disparate treatment under the law for victims of sexual assault. How could it be that a student at the University of Chicago could be afforded greater or different protections under the law than a student who attends the University of Illinois at Chicago or even the School of the Art Institute of Chicago? They are under different statutes. The Federal SAVE Act applies to both private and public schools. And the Illinois Preventing Sexual Violence in Higher Education Act applies to both private and public schools. The level of protection afforded to a crime victim's report should not depend on where the student attends college. Let's talk for a moment about the relief that you're seeking. So what happened downstairs was the judge was presented with a motion to dismiss. The motion to dismiss was denied. And then the certified question under 308 came later. But it seems like you're asking for us to rule on both things at the same time. Your Honor, this Court's dismissal below held that the absolute privilege does not apply. The question on appeal is very narrow and asks this Court to determine whether a crime report of sexual assault made to campus security is absolutely privileged. The relief we are seeking is for this Court to answer the certified question in the affirmative, hold that appellant's reports are absolutely privileged, either under the existing Illinois absolute privilege for statements made to law enforcement, or by exercising this Court's inherent power to protect their reports under the absolute privilege based on public policy concerns of great social importance. Okay, so that's half of it. What's the other half? In so holding, we ask that this Court reverse the trial court's dismissal order. So you're asking for the combo platter. And what I'm trying to figure out from you is, under 308, is there a way that we can do both of those things? Because you're asking us to do, in effect, two things, using an appellate vehicle enunciated in a Supreme Court rule that is narrowly drawn. How do we do that? Your Honor, this Court has the power to do that by using its inherent power. It is more efficient. If this Court determines that... So judicial economy? Judicial economy, yes, Your Honor, because if this Court determines that the absolute privilege applies, this case against appellants is over. So this Court... Well, but your adversaries are making an argument that I don't think is really before us that while the initial report may be absolutely privileged, the repetition of those statements to other campus officials may not be. And that's really not encompassed within the certified question, is it? It's not encompassed within the certified question, Your Honor, because it does not need to be. It is already well-established Illinois law that statements made during the investigation of a crime escape liability. Mr. Rezaghi concedes that these other statements were merely repeating the initial reports that they made to campus security to other school officials during the investigation. That may be, but the question is, in the context in which we're considering the certified question, that issue really doesn't play into it. In other words, if we answer the certified question in the affirmative and say an absolute privilege applies to reports to campus security because campus security is the equivalent of law enforcement, that does not necessarily preclude the plaintiff on remand from making the argument that they advance in their briefs but really isn't before us. Your Honor, this certainly could answer the question in the affirmative and remand to the court for further proceedings. However, it does not need to do so because the Illinois law already decides what level of privilege goes to statements made during an investigation. And this court should exercise its judicial economy and not require the court to go through and consider a further examination of repeated statements made during an investigation. That would be essentially allowing a student to come forward and report under an absolute privilege and then hamstring them and prevent them from cooperating in the very investigation. But I'm really looking at the procedural aspect of it because we're here under 308. There is a particular certified question. The result you're asking for goes a little bit beyond that and says, and we direct the trial court to grant the motion to dismiss. Right? That's correct, Your Honor. And if we got a certified question that said, was the motion to dismiss properly granted, that's not a proper question under 308. 308 says, here's a legal issue. I'm not sure how it should go. What do you think, appellate court? Your Honor, Mr. Rezavi's argument that these other statements are at issue and preclude a complete dismissal of his complaint were not advanced in the trial court. So this court can answer the certified question in the affirmative and reverse the trial court because the trial court merely found that the absolute privilege does not apply to the reports made to campus security. So by redoing so and by reversing the circuit court and remanding for further proceedings, this court would be staying consistent with the proper procedure of 308. Well, if we did that and remanded it to the trial court and the trial court took the case the way you say, then the trial court would just dismiss the complaint, right?  Yes, Your Honor. The result will be the same. The complaint should be dismissed with prejudice under 2619. Well, no, I think it's a little bit more than that. If the motion to dismiss was denied by the trial court specifically only because the trial court did not believe that the privilege existed and we were hypothetically to say that it does, then on that basis I would remand the court would, in your view, I assume, grant the motion to dismiss. That's correct, Your Honor. The question is whether or not we can do that. That's correct. And this court can reverse the circuit court because the sole ground was the absolute privilege to campus security. This other issue was not raised. So this court can reverse, remand to the trial court, and it would be in the trial court's discretion on how to consider the motion to dismiss. Turning to the second independent reason why this court should protect appellant's reports, this court has the inherent power to apply the common law absolute privilege based on public policy of social importance. Campus sexual assaults are a matter of great public importance. Campus sexual assault has been recognized as an epidemic in our nation's higher educational institutions. One in five women are sexually assaulted while in college. There are 192 college campuses in Illinois filled with over 800,000 college students. The Illinois legislature has demonstrated its commitment to protecting Illinois students and encouraging the reporting of victims of sexual assaults on our Illinois campuses by enacting the Preventing Sexual Violence in Higher Education Act. And the public policy behind that act is expressly stated. Because of the fear, stigma, and trauma that often results from incidences of sexual violence, many survivors hesitate to report or seek help and may lack the psychological support necessary to report the incidences to higher educational institutions or law enforcement. The White House Task Force to Protect Students from Sexual Assaults that was created by President Obama in 2014 recently issued their first report. And in their report, they considered sexual assaults to be a unique crime. Unlike other crimes, because victims often blame themselves and are too traumatized or afraid to report the assaults or seek help. The Task Force understands that while some sexual assault victims on college campuses may choose to go to local police, many more college students seek help from their schools. Because of this, the Task Force recommends that all schools, public and private, have campus officials play a more central role in receiving reports and responding to reports of campus sexual assault. Your Honors, the Task Force found that nearly 90% of sexual assault victims on college campuses do not report the assault. Going to Your Honors' question of why a qualified privilege isn't enough here, this is why. Because campus sexual assault is a unique crime. Because the victims feel stigma and trauma that are not associated with any other crimes. And therefore, the qualified privilege is just simply not enough for them to feel safe and protected in coming forward to report the crime. Nearly 90% already don't come forward. An absolute privilege is needed here to encourage our Illinois students to come forward and report campus sexual assault. All right, I'll ask you to finish up, Ms. Booth. If we look at the state and federal law, namely the Illinois Preventing Sexual Violence in Higher Education Act and the Federal SAVE Act, and we look at the Illinois and federal public policy concerning this issue, campus sexual assault, nowhere in those authorities will this court find any language, as it did in Wong with the ORI regulation, that limits the protection that should be afforded to campus sexual assault That is because the law and policy favors the free and unhindered flow of reports of sexual assaults on college campuses, regardless of the truthfulness of the report. That is the very definition of the absolute privilege, Your Honors. And in this month of April, Sexual Assault Awareness Month, we ask that this court protect appellate reports, reports of a crime of sexual assault, made to campus security, with the absolute privilege. Thank you. Thank you. Ms. Bauman? Thank you. Counsel said over and over, reports of a crime, and I think, Your Honor, put your finger on it, a resolution of this specific question before you will not resolve the issues, all of the issues in this case. But that's an argument that goes to whether the question should have been certified. And that was an argument to make to the trial court, saying this is not an appropriate question for certification. And I believe it was. You weren't provided the transcript of that May 12th proceeding. I believe I did object. But nevertheless. That's not in front of us by your very own statement there. Correct. It's waived. It's waived. I don't believe it's waived. I believe the record is incomplete. If that's an issue that Your Honor wants me to address, I can certainly supplement the record. Of course, it's not my duty to provide a full record. In any event, this specific question is whether an absolute privilege should apply for the reporting of crimes to campus security. And I'll ask you the same question I asked Ms. Booth. If Ms. Wachowski used her cell phone to call 911, there would be no question that her communication to law enforcement would be absolutely privileged. And why should it be different if she instead chooses to go to campus police? You're correct. If she called 911, which, incidentally, is exactly what the handbook provides at record page 164. It says victims of sexual assault, relationship violence, and or stalking are encouraged to report these incidents to the police by dialing 911. Or. Or 891. Or. The word is or. Right? Well, or 8911, if you're from a campus building, that's just the extension to get out to 911. That's not call campus security. It's call 911 and you hit 8 first. Okay. And then doesn't it go on to refer to campus security? It says victims are also encouraged to report these incidents to campus security or the directors of student outreach. The way this handbook, this policy is set up, is that people are directed first to call 911. And then if they want to initiate criminal proceedings, and they don't have to, the handbook makes clear, they don't have to take criminal action, they can instead report to campus security or the office of student affairs. What happened in this case, if I understand it correctly, was Ms. Walkoski contacted campus security who then accompanied her to the police station. Right. And that is what the policy contemplates. And we're not questioning anything that has to do with statements made to the police. So if the first report is to campus security, and she says, I'm being stalked, campus security then goes with her to the police station and she says the same thing. She says, I'm being stalked. One is absolutely privileged and the other is not. That's right. In Illinois, the policy is that campus security can be, under the Illinois statute, can be considered law enforcement. There's nothing in this record that suggests campus security, in this case, is law enforcement. And under that statute, it requires that people be appropriately trained, that they do firearms training, and other things that prepare them to do what police officers do. In this case, the record is devoid of anything other than, well, campus security is to keep things safe. They don't have the ability to arrest. They don't have the ability to detain in question. They don't have firearms to protect these students. So all of the trappings that surround the police are not present with campus security. And why that's important is because people are a lot less likely to lie to the police, to lie to someone who is an official state actor. How does a student who is reporting either a sexual assault or some related incident, motivated one way or the other by the fact that it's to campus security or to the Chicago police, when the student doesn't know the extent of the campus security's authority? I just don't understand how that determines the privilege. That the student policy handbook explicitly provides that a complaint may be made to campus security to initiate disciplinary proceedings, or 9-1-1 or if you're in a campus building, 8-9-1-1 should be called for criminal reports. So we're supposed to decide the certified question based on some of the language of this specific policy? Is that good public policy for us to answer the certified question based only on certain language from the SAIC student handbook? Probably not. However, you do have the facts as they exist in front of you. And to get to the policy question, I made an error in my initial brief concerning the Illinois statute. I said it had not been codified. It had, in fact, been codified. It just is not, most of it is not effective until August of 2016. And what I'm talking about is the Illinois Preventing Sexual Violence and Higher Education Act. And that was actually passed in August of 2015. And it's really important because this really does reflect what the public policy in Illinois, at least as to student disciplinary proceedings are. And it's clear in reading this that the legislature considered some of the cases that we've been discussing in these briefs. So there are additional requirements that the Illinois legislature has enacted incorporating time frames into the procedures, specialized training for employees who will take reports of sexual abuse. But most importantly, there's an amnesty provision. And that's at section 10, subsection 10. And that's a statement of the higher education's obligation to include an amnesty provision that provides immunity to any student who reports in good faith an alleged violation of a higher education institution's comprehensive policy to a responsible employee. And that's also that good faith qualification is repeated in subsection 11 with regard to retaliation. Did you make this argument in your brief? I don't recall it. I don't. I didn't. I'm sorry. Okay. Yeah. She did cite the statute. I cited the statute. Right. But I don't recall the good faith argument. Yeah. Not that. I missed it. And I apologize for that. But that is section 10. She referred to lack of answer. I think what I referred to in the brief was the training and the confidentiality which is required for the people who are receiving the complaints. It seems like you're saying in an oblique way that the public policy of Illinois should be that alleged offenders should be able to sue for defamation if the victim reported to campus security as opposed to a police department. How is that an appropriate public policy for the State of Illinois? The State of Illinois has long held that there are very few exceptions to the defamation. Yes, sexual assault, sexual abuse is important. But there must be protections in place to counterbalance the interest of encouraging students to report sexual misconduct. And that counterbalance is reflected in the current status of the law which states that there is absolute immunity only when there is a report to law enforcement for the purpose of initiating law enforcement action. Now, to your point, you will note that Ms. Walk-Husky did submit an affidavit. She signed an affidavit. And her affidavit, which is part of the record, said that she considered that even though she read the policy, which said something different, she considered, based on some other training she received, the campus security to be law enforcement. She did not say that when she reported to campus security, she intended to initiate legal proceedings. So they have to do that. They have to say that. It has to be both. A person who has been a victim of sexual violence has to make sure that they dot all the I's and cross all the T's in order to satisfy your public policy. When you are moving from such an established policy as it is in Illinois, yes, it has to be clear. And it's not about dotting I's and crossing T's. It's about fairness and creating a balance between encouraging women to report some really terrible things that happen with making sure that innocent people are not victimized as a result. But that was the policy determination that Illinois courts made a long time ago when they said reports of sexual assaults or any other crime to law enforcement are absolutely privileged. And I think courts recognize there might be instances where there are false reports that are motivated by something other than an honest desire to report a crime. But the policy is that we're going to take that risk because we want people to feel free to contact law enforcement. And I completely agree with that. And I agreed with that in my brief. So you get a pass if it's to campus security? It's not that you get a pass. It's that there are certain protections in place for law enforcement personnel. They are trained, for example. Campus security is not necessarily trained in anything. We don't know. In terms of the victim's reporting and the public policy underlying the absolute privilege, I don't understand what difference it makes what training the recipient of the complaint receives. Mr. Rezavi was expelled from school not because of her initial report to campus security. He was expelled because she reported and repeated her allegations during disciplinary proceedings. That's not the issue before us. That is not encompassed in the certified question. Counsel suggested that that issue was not raised below. If you review the record, that issue has always been part of it. My point is, and I asked Ms. Booth about this, we are confined under Rule 308 to the certified question. The certified question is, is campus security the functional equivalent of law enforcement for purposes of an absolute reporting privilege? That does not encompass issues specific to this case that you say prompted your client's expulsion from school. If this court limits to this specific charge, I think that there are significant policy reasons not to put campus security and law enforcement on equal footing. And I've said some of those, but I can see what you're saying in that very limited sense. My argument has been the real damage occurred. We're not here after a trial. And we're not here specifically on an interlocutory appeal that you might get for some reason for the denial of a motion to dismiss. We're here on a 308, and we have to comply with the rules, all of us. I think the public policy reasons I identified, the protections and the very office of the police make it more likely that there will be honest reporting. As appellants concede, there is between 2% and 8% error rate, and there has to be some balance. There has to be some recourse. If it's solely to police, and you consider campus security to be law enforcement for these purposes, I don't think that's good policy, but I understand what you're saying. All right. Thank you. Thank you. Ms. Booth, briefly. Your Honors, Mr. Rezavi asked this court to reach a holding that would only allow students to report to the local police. That flies directly in the face of the Illinois Preventing Sexual Violence in Higher Education Act. It flies directly in the face of federal law, and it flies directly in the face of public policy, encouraging students to come forward and report sexual violence to either school campus security or local police. Appley's counsel read selectively from the student handbook concerning what it directs the student to report sexual assaults to. To clear the record, I direct this court to Record.167, which is a What to Do If You've Been the Victim of Sexual Assault. It's a one-page snippet that students are given, and it says, What to do if you are the victim of sexual assault? To get help, call the police at 911. And going to your Honors point, it continues. Or, if you are on campus, contact campus security. Appley's counsel also addressed this good-faith argument in reporting and whether the reports of appellants were made for the purpose of instituting legal proceedings or not. It is presumed in Illinois that a crime report made to law enforcement is for the purposes of instituting legal proceedings. No Illinois court has scrutinized the purpose of a report when it concerns a crime. For example, in Morris v. Harvey cycle, this court held that a crime report was absolutely privileged, even though plaintiffs alleged not only the report was false, but that it was made with malice and for the purposes of intimidation and not for instituting legal proceedings. And in fact, in Morris, the police later determined that the crime report was false. Nonetheless, this court upheld the long-standing Illinois law that crime reports to law enforcement are absolutely privileged, regardless of the truth of the report. And this defamation case isn't unique. Any well-pled defamation case will plead that the report is false. That is an essential element of a defamation claim. Appellee's assertion that the absolute privilege should not apply unless the reports are made in good faith would entirely erode the absolute privilege, as no absolute privilege could be found where the report is alleged to be false. We don't require, in Illinois, we don't require reports of murder to meet a good faith standard. We shouldn't require reports of campus sexual assault to meet a good faith standard either, particularly when the public policy tells us that campus sexual assault is unlike any other crime, particularly when the White House Task Force found that the main reason students do not report the assault is because they fear reprisal from the police. We also don't put the burden on students to ascertain the legal authority of campus security or whomever they report to. Our public policy is that they report and seek help. That's it. Not that they conduct a legal analysis to ascertain what the authority of campus security is. We don't put the burden on them to conduct a statutory interpretation of whether they've been opted under the police force statute or not. We just simply don't put that burden on any crime victim. There's no reason to put it on victims of sexual assault on college campuses. And finally, Your Honors, going to the point of the school's investigation and the public policy concerns surrounding school's investigations of campus sexual violence, that is immaterial to the report of sexual violence. What a campus chooses to do in investigating a report, whether they comply with the statute or not, either state or federal at this point, is immaterial to whether the student's report in the first place should be absolutely privileged. The student has no control over what happens to her report when she makes it. She has no control whether the school chooses to investigate it and whether they follow the procedures and the due process that are afforded to the accused under the SAVE Act. Thus, looking at what the school's proceeding did or the public policy surrounding what happens after a report is made is immaterial here. This Court should focus on the Illinois and federal law and public policy surrounding the prevalence of sexual assaults on college campuses and the under-reporting of sexual assaults on college campuses and hold that appellant's reports made to campus security reporting the crime of sexual assault are protected by the absolute privilege either under the existing law in Illinois, which required this Court to simply apply existing law and hold that the statements were made to law enforcement, or this Court can exercise its inherent power and protect the reports based on the overwhelming public policy of this great, social, important issue. Thank you. All right. Thank you both. Very interesting issue. Excellent arguments and briefs. We will take the matter under advisement and recess briefly before our next case.